**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| ANNIE GRANT GORDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:17-CV-02113-TMP |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

The plaintiff, Annie Grant Gordon, appeals from the decision of the Commissioner[1] of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Mrs. Gordon timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g),

---

[1] It appears, from the briefs filed by the Government in other Social Security cases and from news reports, that there is neither a Commissioner nor an Acting Commissioner currently serving in the Administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13 ).

The plaintiff was 56 years old on the date of the ALJ's opinion on November 1, 2016. (Tr. at 30, 169). Her past work experience includes employment as a child development center teacher and childcare center director. (Tr. at 31). The plaintiff claims that she became disabled on July 17, 2010, from Addison's disease, hypothyroidism, Cushing's disease, osteoarthritis, and depression. (Tr. at 46). Plaintiff last met the insured status requirements under the Social Security Act on December 31, 2014. (Tr. at 22).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. Id. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. Id. The decision depends on the medical evidence in the record. See Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971). If

the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. Id. If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. Id. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. Id. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. Id. The burden is on the

Commissioner to demonstrate that other jobs exist which the claimant can perform; once that burden is met, the claimant must prove her inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the application date, July 17, 2010. (Tr. at 24). According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: "Addison's disease,[2] hypothyroidism,[3] Cushing's syndrome,[4] adjustment disorder, and osteoarthritis." Id. He determined that the plaintiff's claim related to celiac disease was not supported by evidence of a medically determinable physical or mental condition. (Tr. at 25). The ALJ found that the

---

[2] Addison's disease is an autoimmune disease in which the adrenal glands do not produce sufficient amounts of the hormones cortisol and aldosterone. Cortisol helps "the body respond to stress, including the stress of illness, injury, or surgery. It also helps maintain blood pressure, heart function, the immune system, and blood glucose (sugar) levels," while aldosterone "affects the balance of sodium and potassium in the blood, which in turn controls the amount of fluid the kidneys remove as urine, which affects blood volume and blood pressure." https://my.clevelandclinic.org/health/diseases/15095-addisons-disease (last viewed Feb. 7, 2019). An "Addisonian crisis" is a serious medical emergency that can be fatal if untreated.

[3] Hypothyroidism is a condition in which the thyroid gland fails to produce enough crucial hormones. "Over time, untreated hypothyroidism can cause a number of health problems, such as obesity, joint pain, infertility and heart disease." https://www.mayoclinic.org/diseases-conditions/hypothyroidism/symptoms-causes/syc-20350284 (last viewed February 7, 2019).

[4] Cushing's syndrome occurs when the body is exposed to high levels of the hormone cortisol, occurring either naturally or due to medication. It can result in high blood pressure, bone loss and, on occasion, type 2 diabetes, as well as severe fatigue, depression, and anxiety. https://www.mayoclinic.org/diseases-conditions/cushing-syndrome/symptoms-causes/syc-20351310 (last viewed February 7, 2019).

plaintiff's impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 25. The ALJ found that the plaintiff's hypothyroidism, Cushing's syndrome, and Addison's disease were not limiting to the levels required by the listing. Id. The ALJ also found that the plaintiff's adjustment disorder did not meeting listing requirements because she has only mild restriction in activities of daily life, mild difficulties in social functioning, and moderate difficulties with regard to concentration. Id. The ALJ determined that the plaintiff has the residual functional capacity to perform work at the light level of exertion with additional limitations. Id. at 26. The ALJ further elaborated:

> After careful consideration of the entire record, the administrative law judge finds that since July 17, 2010, the claimant has the residual functional capacity to perform light work as defined in CFR 404.1567(b) and 416.967(b) with the following clarifications and/or exceptions. The claimant is limited to unskilled work not requiring complex instructions or procedures. The claimant cannot work at unprotected heights or around hazardous machinery, and she cannot climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, couch [sic], and crawl. The claimant should avoid concentrated exposure to extreme heat and extreme cold. Lastly, the claimant can tolerate frequent interaction with coworkers, supervisors and the general public.

(Tr. at 26).

According to the ALJ, the plaintiff is unable to perform her past relevant work. (Tr. at 31). Before March 29, 2015 (the date on which she attained 55 years

of age), she was an "individual closely approaching advanced age" and the "transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferrable job skills." (Tr. at 31). During this time, the ALJ used the testimony of a vocational expert to determine that there are a significant number of jobs in the national economy that she was capable of performing, such as garment sorter, marker, and inspector/hand packager. (Tr. at 32). However, on March 29, 2015, plaintiff's age category changed and she became an "individual of advanced age." After that date, she was "unable to transfer job skills to other occupations" and there were "no jobs that exist in significant numbers in the national economy that [she] could perform." (Tr. at 32). The plaintiff has "at least a high school education" and is "able to communicate in English" as those terms are defined in the regulations. (Tr. at 31). The ALJ concluded his findings by stating that Plaintiff "was not disabled prior to March 29, 2015, but became disabled and has continued to be disabled through the date of this decision." <u>Id.</u> at 33. Therefore, although the plaintiff was entitled to receive Supplemental Security Income, she was not entitled to disability insurance benefits because she became disabled after her last insured date of December 31, 2014.

## II.  Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  See Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  Id.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966)).  Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  Miles, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record

in its entirety to determine the reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. See Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

The lone issue on this appeal is whether the ALJ improperly applied the age criteria of the Medical-Vocational Guidelines. Essentially plaintiff's argument is that the ALJ should have considered Gordon to be an individual of advanced age on or before her date last insured because her last insured date was about three months prior to her fifty-fifth birthday. (Doc. 10, p. 3). The commissioner, on the contrary, points out that the ALJ used the Medical-Vocational Guidelines only as a framework, and that his determination that the plaintiff was not disabled prior to March 29, 2015 was founded upon the testimony of the vocational expert.

The ALJ found that the plaintiff was capable of performing a limited range of light work until her fifty-fifth birthday. (Tr. at 26). He then used the Medical-Vocational Guidelines as a framework for consideration of other evidence related to the plaintiff's ability to do work. For example, he wrote:

> In determining whether a successful adjustment to other work can be made, the administrative law judge must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that

> directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).
> If the claimant has solely nonexertional limitations, section 204.00 in the Medical- Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

(Doc. 8-3, p. 33 of 62). Recognizing that the plaintiff could perform only a limited range of light work, the ALJ turned to the testimony of a VE to determine the plaintiff's ability to adjust to new work. "To determine the extent to which these limitations eroded the unskilled light occupational base, the Administrative Law Judge asked [the vocational expert] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. [The VE] testified that given all of these factors, the individual would have been able to perform the requirements of representative occupations such as garment sorter…; marker…; and, inspector/hand packager…." (Id.). It is apparent, therefore, that the ALJ did not use the Medical-Vocational Guidelines mechanically to determine the age adjustment of the plaintiff.

After a finding that a claimant is unable to perform any of her past work, the ALJ must show that there is other work that a plaintiff may perform. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). It is proper for an ALJ to use the Medical-Vocational Guidelines to assist in making this determination for a given claimant. Heckler v. Campbell, 461 U.S. 458, 467, 76 L. Ed. 2d 66, 103 S. Ct. 1952 (1983). However, an ALJ may apply the grids in a straightforward manner

only when each variable in the grid accurately accounts for the claimant's limitations. Walker v. Brown, 826 F.2d 996, 1003 (11th Cir. 1987). In other words, when a claimant is not able to perform all of the work at a given exertional level or when she has non-exertional limitations, the ALJ may not use the grids to direct a finding of disability or non-disability. Id.

The Eleventh Circuit's unpublished opinion in Miller v. Commissioner of Social Security, 241 F. App'x 631 (11th Cir. 2007), is essentially indistinguishable from the instant case. There, the court of appeals rejected the argument that the ALJ should have treated the claimant as a "person of advanced age," rather than a "person closely approaching advanced age," when his fifty-fifth birthday was only two months away. It did so for two reasons: first, the ALJ did not rely exclusively on the "grids", but also considered the testimony of a VE to assess the number of jobs available to the claimant, and second, the claimant made no proffer of evidence showing that his ability to adapt to new work is less than indicated by the applicable age grid. Id., 241 F. App'x at 635. The same reasons are true in the instant case. The ALJ clearly did not rely exclusively on the age grids, but considered the testimony of a VE. Thus, he did not "mechanically" apply the Medical-Vocational Guidelines in reaching his determination. Second, the plaintiff

has made no proffer in this court[5] related to any decreased ability to adapt to work suitable for her age group.

Because it would have been improper for the ALJ to apply the grids when Gordon could perform only a restricted range of light work, it is clear that the court may not reverse the ALJ, determine which age criteria Gordon should be placed in, and apply the grids to find Gordon was disabled on or before her disability insurance end date. The preferred method for an ALJ to demonstrate that a plaintiff is able to perform jobs that exist in the national economy if application of the grids is not possible is through the testimony of a VE. Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985). Here, the ALJ relied upon the testimony of the VE and determined that there were jobs in the national economy that the plaintiff could perform, and thus, he found that Gordon was not disabled before March 29, 2015.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Gordon's arguments, the Court finds the Commissioner's decision is supported by substantial evidence, and the legal conclusions are in accord with the applicable

---

[5] The procedure described by the Court of Appeals in Reeves v. Heckler, 734 F.2d 519 (11th Cir. 1984), and Patterson v. Bowen, 799 F.2d 1455 (11th Cir. 1986), indicates that if the claimant proffers evidence in the district court of reduced ability to adapt, the district court should remand the matter to the ALJ for consideration of the evidence. But if no proffer is made, the district court should affirm the Commissioner's determination, absent other unrelated errors.

law.  The Commissioner's determination denying disability benefits is due to be affirmed.  A separate order will be entered.

DONE this 8th day of February, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE